UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

DARREN FOSTER and 914 EQUITIES LLC,

                    Plaintiffs,

   -against-

2001 REAL ESTATE; SPACE CATALYST, INC.;
NEW MATTHEWS AVENUE LLC; NEW PELHAM
PARKWAY NORTH LLC; NPPN-BP, LLC; NPPN-LP,
LLC; NPPS-BP, LLC; NPPS-LP, LLC; NPT-BP,
LLC; NPT-LP, LLC; Nma-BP, LLC; Nma-LP, LLC;
LLOYD PUTTER; BERNARD PUTTER; and NEW
PELHAM PARKWAY SOUTH LLC,

                    Defendants.

------------------------------------------X

14 Civ. 9434 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-24-15

A P P E A R A N C E S:

        Attorneys for the Plaintiffs

        GALE P. ELSTON, P.C.
        107 Grand Street, 4th Floor
        New York, NY 10013
        By:   David Jason Gerard, Esq.
             Michael Louis Gentlesk, Esq.

        Attorneys for the Defendants

        NIXON PEABODY LLP
        50 Jericho Quadrangle, Suite 300
        Jericho, NY 11753
        By:   James W. Weller, Esq.
             Thomas M. Mealiffe, Esq.

        Attorneys for the Cross-Moving Defendants

        BARNES & BARNES, P.C.
        445 Broadhollow Road, Suite 226
        Melville, NY 11747
        By:   Leo K. Barnes Jr., Esq.

**Sweet, D.J.,**

Defendants Bernard Putter ("Bernard"); NPPN-BP, LLC; NPPS-BP, LLC; NPT-BP, LLC; and NMA-BP, LLC (collectively, the "Defendants") have moved to dismiss the Complaint of plaintiffs Darren Foster and 914 Equities LLC (collectively, the "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Plaintiffs allege breach of contract, unjust enrichment, fraud, tortious interference with contract, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), arising out of an alleged breach of a real estate brokerage agreement for the sale of four buildings in the Bronx. Defendants New Matthews Avenue LLC, New Pelham Parkway North LLC, New Pelham Parkway South LLC, and New Parkway Terrace LLC (collectively, the "Cross-Moving Defendants") have joined the Defendants in their motion to dismiss. The Plaintiffs have opposed the motion, and cross moved to file a First Amended Complaint (FAC), presumably pursuant to FRCP 15(a)(2). Upon the conclusions set forth below, the RICO cause of action is dismissed for failure to state a claim. The court declines to exercise jurisdiction over the remaining state law claims. The cross-motion to file the FAC is denied.

**The Parties**

2

The Plaintiffs are New York residents, as are the Defendants.  (See Complaint, Dkt. No. 1 ¶¶ 6-41.)

## Prior Proceedings

Plaintiffs filed their Complaint on November 26, 2014. (Dkt. No. 1.)  Although they originally named over two dozen defendants, they voluntarily discontinued their claims against a number of them.  (Dkt. No. 22-23, 27).  Defendants Lloyd Putter; NPT-LP, LLC; Nma-Lp, LLC; NPPN-LP, LLC, NPPS-LP, LLC; and 2001 Real Estate filed an Answer on January 20, 2015, and made cross-claims against codefendants for contribution and indemnification.  (Dkt. No. 5.)  The Defendants moved to dismiss the Complaint on May 28, 2015 (Dkt. No. 36), and the Plaintiffs cross-moved to file the FAC on July 13, 2015.  (Dkt. No. 47.) On July 27, the Cross-Moving Defendants filed their cross-motion, joining the motion to dismiss in most respects.  (See Dkt. Nos. 60 & 61.)  The motions were submitted on July 8, August 12, and August 26, 2015.  (See Dkt. Nos. 40, 64, and 65.)

## The Complaint

3

The Plaintiffs' initial Complaint alleges that they entered into a a brokerage agreement with 2001 Real Estate, through defendant Lloyd Putter ("Lloyd"). (Complaint, Dkt. No. 1, ¶¶ 44-46.) Lloyd and Bernard are brothers, and were principals of 2001 Real Estate. (Id. ¶¶ 29, 32.) Under the putative agreement, the Plaintiffs were responsible for finding potential purchasers for four properties that the Putter family owned in the Bronx. (Id. ¶ 45.) The agreement also allegedly provided that the target price for the sale was $50 million, and that 3% of the gross purchase price would be taken as commission, split equally between Lloyd's company, 2001 Realty, and Foster's then-company, Prudential Douglas Elliman. (Id. ¶¶ 46, 48-49.) Foster and Lloyd also allegedly signed a confidentiality agreement, providing that approval by both Lloyd and Bernard would be required prior to any showing of the properties. (Id. ¶¶ 47, 49.)

According to the Complaint, Foster began to solicit purchasers and brought several bona fide offers to Bernard and Lloyd, including one for $47,000,000 from Fayer Capital. (Id. ¶ 52-58.) The brothers rejected each offer, though, demanding that the purchase price be raised to $60 million, even though the agreement specified a lower price. (Id. ¶ 53.) Foster allegedly later discovered that Bernard had listed the properties on his own and had sought to retain another agent, in

4

violation of the brokerage agreement. (Id. at 59, 61.) When Foster confronted the brothers regarding the breach, Bernard delisted the properties and cut off negotiations with the other agent. (Id at 62-63.)

In December 2011, Foster left Prudential and founded his own company, 914 Equities, a plaintiff in this case. (See Id. ¶ 64.) Foster interpreted the brokerage agreement as still valid with his new company, with Lloyd and Bernard allegedly approving that interpretation. (Id. ¶ 65.) At some point in 2012, the brothers had a falling-out and ended up in arbitration against one another. (Id. ¶ 66.) In January of 2013, 914 Equities stopped paying the mortgages on two of the Bronx properties, but did not communicate that fact to Foster. (Id. ¶ 68.)

Shortly afterward, on April 29, 2013, Foster informed Lloyd that he had found a new buyer, Wharton Equity, who had tentatively offered $62 million in exchange for the properties, subject to a standard due diligence review. (Id. ¶ 70.) The next day, Foster learned that Lloyd had submitted an offer in the arbitration with his brother, from an entity called Ward Capital. (Id. ¶ 74-75.) The Ward Capital offer was for a total of $60 million, but there was no broker involved, and the finder's fee would be paid to an unlicensed broker or agent. (Id. ¶ 75.)

Despite the fact that the Wharton offer was for more money,
Bernard did not provide the required financial information in
time for the required due diligence review, and the brothers
would not extend the bid deadline in order to accommodate the
delay.  (Id. ¶ 78-81.)  Ward was awarded the bid on the
property, with Fayer as a backup bidder.  (Id. ¶ 82.)  Fayer's
bid was allegedly submitted to the arbitrator with the false
statement that there was no broker attached.  (Id. ¶ 86.)  The
deal with Ward fell through – the Plaintiffs allege that it was
fraudulent in the first place, designed to avoid paying a
commission – and Foster understood that Fayer had been awarded
the bid.  (Id. ¶ 85, 89-90.)  However, despite assurances from
the brothers that the properties were "still transferring,"
ostensibly to Fayer, the Plaintiffs later learned that the
buildings were transferred to a series of LLCs – the business
organizations named as defendants in this suit and ending in -LP
or -BP.  (Id. ¶¶ 85-105.)  Plaintiffs believe that these
companies are intended to hold the properties prior to a
transfer to Fayer, who Foster originally brought in as a bidder,
without any commission being paid.  (Id ¶ 106.).

**Applicable Standard**

In deciding a motion to dismiss, the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in favor of the Plaintiffs, as the non-moving party. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). The Court then determines whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quotation omitted). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

When a party requests leave to amend a complaint, "permission generally should be freely granted." Grullon v. City of New Haven, 720 F.3d 133 (2d Cir. 2013). However, a plaintiff is not entitled to amendment, and denial is proper under certain circumstances, such as when amendment would be futile. D. Penguin Bros. Ltd. V. City Nat'l Bank, 587 F. App'x 663, 669 (2d Cir. 2014). The decision to grant or deny leave to amend is a discretionary one. Id.

**The RICO Cause of Action is Dismissed**

7

In order to establish a civil claim under RICO, a plaintiff must allege 1) conduct, 2) of an enterprise, 3) through a pattern, 4) of racketeering activity, as well as injury to business or property as a result of the RICO violation.  Lundy v. Catholic Health Sys. Of L.I., Inc., 711 F.3d 106, 119 (2d Cir. 2013).  The pattern of racketeering activity must consist of two or more predicate acts of racketeering.  Id. (citing 18 U.S.C. § 1961(5)).  Alleged RICO violations "must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney's fees in federal court simply because they are cast in terms of RICO violations."  Leung v. Law, 387 F. Supp. 2d 105, 112-13 (E.D.N.Y. 2005); see also Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device . . . . Thus, courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." (quotations omitted)).

The Supreme Court defines a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing

unit." See United States v. Turkette, 452 U.S. 576, 583 (1981).
The enterprise is distinct from the pattern of racketeering
activity in which it engages, and must be proven as a separate
element. See id. Indeed, it is essential that the enterprise
be distinct from the individuals comprising it; to establish
liability, the plaintiff must allege an enterprise that is not
"simply the same 'person' referred to by a different name."
Greenberg v. Blake, No. 09 Civ. 4347, 2010 WL 2400064, at *4
(E.D.N.Y. June 10, 2010) (citing Cedric Kushner Promotions, Ltd.
V. King, 533 U.S. 158, 616 (2001)). But although the enterprise
and the pattern of racketeering activity are separate elements,
the Second Circuit "requires that a nexus exist between the
enterprise and the racketeering activity that is being
conducted. First Capital Asset Mgmt., Inc. v. Satinwood, Inc.
385 F.3d 159, 173-74 (2d Cir. 2004). "[F]or an association of
individuals to constitute an enterprise, the individuals must
share a common purpose to engage in a particular fraudulent
course of conduct and work together to achieve such purposes."
Id. (quotation omitted).

The Supreme Court further requires that each RICO defendant
have "some part in directing" the enterprise's affairs. Reves
v. Ernst & Young, 507 U.S. 170, 179. This element is commonly
referred to as the "operation or management requirement." JSC
Foreign Econ. Ass'n Technostroyexport v. Weiss, No. 06 Civ.

6095, 2007 WL 1159637, at *8 (S.D.N.Y. Apr. 18, 2007). Although
the operation or management requirement "typically has proven to
be a relatively low hurdle for plaintiffs to clear, especially
at the pleading stage," Satinwood, 385 F.3d at 176, in order for
a RICO complaint to survive a motion to dismiss, it must allege
control or management on the part of each defendant, West 79th
Street Corp. v. Congregation Kahl Minchas Chinuch, No. 03 Civ.
8606, 2004 WL 2187069, at *13 (S.D.N.Y. Sept. 29, 2004), and the
participation of each defendant must have "exceeded the mere
rendering of legitimate professional services." Weiss, 2007 WL
1159637, at *8.

Here, the Plaintiffs contend that the Defendants
constituted an "association-in-fact enterprise," in which a
group of persons associate together for a common purpose of
engaging in a course of conduct. (See Complaint ¶ 109; Boyle v.
United States, 556 U.S. 938, 946 (2009)). Although the
association may be a loose one, it must have at least three
structural features: a purpose, interpersonal relationships
between those associated with the enterprise, and longevity
sufficient to permit those associates to pursue the enterprise's
prupose. Boyle, 556 U.S. at 946. In order to determine whether
a complaint properly alleges an association-in-fact enterprise,
"courts in this Circuit look to the 'hierarchy, organization,
and activities' of the association to determine 'whether its

10

members functioned as a unit.'" Conte v. Newsday, Inc., 703 F.

Supp. 2d 126, 133-34 (E.D.N.Y. 2010) (quoting Satinwood, 385

F.3d at 174-75). In his pleading, "the plaintiff must provide

solid information regarding the hierarchy, organization, and

activities of the alleged enterprise, from which the court could

fairly conclude that its members functioned as a unit. Lack of

proof of such an independently existing separate enterprise

dooms a RICO claim." Greenberg v. Blake, No. 09 Civ. 4347, 2010

WL 2400064, at *4 (E.D.N.Y. June 10, 2010) (quotations and

ellipses omitted). "In practice, the dual requirements of 1)

distinctness and 2) the proof needed to demonstrate an

association-in-fact, work in tandem to weed out claims dressed

up as RICO violations but which are not in fact." City of New

York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 447 (2d Cir.

2008), *rev'd in part on other grounds*, Hemi Group, LLC v. City

of New York, 559 U.S. 1 (2010).

The Complaint in this case fails to meet either

requirement. After reciting the elements of their RICO claims

(Complaint ¶¶ 108-15), the Plaintiffs describe the Defendants'

actions in concert as follows:

116. The Defendants, acting together in concert and
conspiracy, have participated in a continuously
running scheme, dating from at least 2010 and
lasting to present time, in which, acting jointly
and severally, they have, among other acts, made
fraudulent property conveyances, arranged for and
obtained fraudulent mortgages and committed bank

fraud, in order to achieve and conceal their scheme to defraud.

117. As part of the RICO Defendants' scheme and artifice to defraud, in the fall of 2010 Defendants Lloyd Putter, Bernard Putter and 2001 Realty enticed Plaintiff Darren Foster to utilize his real estate brokerage skills and efforts to obtain a ready, willing, and able buyer for the Putter Portfolio, by promising him a commission of 1.5 percent of the gross purchase price. The Putters and 2001 Realty further lured Mr. Foster into their scheme by signing agreements with Darren Foster memorializing the agreement, knowing full well that they would never pay him any commission.

118. At the time that the Defendants Lloyd Putter, Bernard Putter and 2001 Realty made these representations to Darren Foster, they were fully aware, *inter alia*, that their promises were entirely false, that they intended to use Darren Foster's services entirely for the gain of the Enterprise and that they had no intention of paying Darren Foster any money that was due him.

(Complaint ¶¶ 116-18.)  These paragraphs allege that the

Defendants conspired together to defraud Mr. Foster, but despite

an offhand reference to an "Enterprise," they fall short of

alleging "that the conspirators formed and organized a separate

entity (whether formal or informal) on whose behalf they acted;

it is not enough if they merely acted together to commit the

wrong."  Wild Edibles Inc. v. Indus. Workers of the World Local

460/640, No. 07 Civ. 9225, 2008 WL 4548392, at *1 (S.D.N.Y. Oct.

9, 2008).  In other words, the Complaint "fail[s] to provide a

plausible basis for inferring that [Defendants] acted on behalf

of the *enterprise* as opposed to on behalf of themselves in their

12

individual capacities, to advance their individual self-interests." D. Penguin Bros. Ltd. V. City Nat'l Bank, 587 F. App'x 663, 668 (2d Cir. 2014). Moreover, the extent of the Plaintiffs' allegations are that the Defendants were in league with each other; "the pleadings are entirely silent as to the internal workings or organization of the enterprise, explaining neither how it was run nor by whom." Greenberg, 2010 WL 2400064, at *6. Although the Supreme Court's holding in Boyle establishes that a RICO enterprise need not have a formal hierarchy, a Plaintiff must still allege some structural features; otherwise, "any two thieves in cahoots would constitute an association-in-fact." Id. at *7; cf. Boyle, 556 U.S. at 946. This failure to establish an association-in-fact distinct from the individuals themselves is fatal to the Plaintiffs' claims.

In addition, the Plaintiffs fail to adequately allege that each defendant engaged in and participated in a pattern of racketeering. In order to do so, a plaintiff must show at least two acts of racketeering activity, the last of which occurred within ten years after the commission of the prior act of racketeering activity, the predicate acts must be among the various criminal offenses listed in 18 U.S.C. § 1961(1), and they must either amount to or pose a threat of continuing criminal activity. Spool v. World Child Int'l Adoption Agency,

13

520 F.3d 178, 183 (2d Cir. 2008). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern — a series of related predicate acts extending over a substantial period of time — or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Id. (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989)).

The Plaintiffs' Complaint meets neither test. To show closed-ended continuity, a plaintiff must prove "a series of related predicates extending over a substantial period of time." Id. at 184. The relevant time period is the time during which the RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place, and the Second Circuit has never held a period of less than two years to constitute a substantial period of time. Id. (citing Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999). The relevant portion of the Plaintiffs' complaint alleges only three acts of wire fraud, the first in April of 2013 and the last in January of 2014. (Complaint ¶ 127.)[1] Even if the period were to stretch back to

---

[1] The three wire transmissions include one between Lloyd and Foster on April 29, 2013; one between defendant Andrew Salomon and Foster on October 1, 2013; and one between Salomon and Foster on January 20, 2014. The Complaint does

14

the first alleged breach of the contract during the Summer of 2011 (Complaint ¶¶ 58-59), an interpretation that likely could not be supported since state-law breach of contract is not one of the enumerated acts in 18 U.S.C. § 1961, the showing is insufficient to establish closed-ended continuity when also considering "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes." See Cofacredit, 187 F.3d at 242.

Nor can the Plaintiffs establish open-ended continuity. Doing so requires the plaintiff to show that there is a threat of continuing criminal activity beyond the period during which the predicate acts were performed. Spool, 520 F.3d at 185.  The analysis depends in part on the type of enterprise alleged; where the enterprise's business is primarily or inherently unlawful, the threat of continuing criminal activity is generally presumed, but where the enterprise primarily conducts a legitimate business, the threat is only established where there is evidence from which it may be inferred that the predicate acts were the regular way of operating that business.

---

not explain how any Defendant other than Salomon is alleged to have engaged in the required two predicate acts, a showing that is required. See West 79th Street Corp., 2004 WL 2187069, at *7 ("where more than one defendant is charged with fraud, the plaintiff must particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." (quotation and citation omitted)).

See id.  Although the precise nature of the alleged enterprise

is murky, as discussed above, it includes 2001 Realty and Fayer

Capital, which existed well before the events at issue here,

presumably legitimately.  Although the Complaint includes a

conclusory statement saying that racketeering "is and was the

Defendants' regular way of operating," it includes no

allegations or evidence of racketeering outside of the events

concerning the sale of the Bronx properties.  Therefore, the

Complaint alleges, at most, "a serious, but discrete and

relatively short-lived scheme to defraud a handful of victims

through racketeering activity," Cofacredit, 187 F.3d at 244, one

which presumably could not be repeated once the Defendants

successfully sold the properties.  "Such an inherently

terminable scheme does not imply a threat of continued

racketeering activity."  Id.; see Spool, 520 F.3d at 186.

        These flaws in the Complaint, which prevent the Plaintiffs

from being able to state a RICO claim under 18 U.S.C. § 1962(c),

also fatally undermine their RICO conspiracy claim under 18

U.S.C. § 1962(d).  See Satinwood, 385 F.3d at 164 (dismissing

RICO conspiracy claims dependent on substantive RICO claims).

The allegations of a RICO conspiracy would also fail on the

merits, since the Complaint lacks sufficiently specific factual

allegations to support the conclusion that each of the

defendants consciously agreed to commit the predicate acts

16

alleged. See 4 K & D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014); Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999). Although the Complaint contains numerous allegations that the Defendants "confederated," "conspired," or "agreed" to commit the predicate acts, (see, e.g., Complaint ¶¶ 108, 116, 126), such conclusory statements, without more, are insufficient to sustain a RICO conspiracy claim. See 4 K & D, 2 F. Supp. 3d at 545; Black Radio Network, 44 F. Supp. 2d at 581.[2]

The RICO cause of action is not adequately pled with respect to the enterprise, racketeering activity, predicate acts, continuity requirement, or conspiracy, and is therefore dismissed.[3]

## The Court Declines Jurisdiction over the State Law Claims

The Plaintiffs' RICO claims are their only causes of action based on federal law, and there is no diversity present because both the Plaintiffs and the Defendants are based in New York.

---

[2] The allegations of an agreement are also inconsistent, at least at first glance, with the fact that Lloyd and Bernard were at odds with one another and on opposite sides of an arbitration regarding the properties during the time in question. (See Complaint at ¶ 66.)

[3] Since the Court declines jurisdiction over the Plaintiffs' state law claims, this Opinion does not reach those portions of the motion to dismiss concerning the claims for breach of contract, unjust enrichment, tortious interference with contract, or fraud.

17

(See Complaint, Dkt. No. 1.)  Pursuant to 18 U.S.C. §
1367(c)(3), a district court may decline supplemental
jurisdiction over state law claims where it has dismissed all
claims over which it had original jurisdiction, a decision which
is "purely discretionary."  Hinterberger v. Catholic Health
Sys., Inc., 536 F. App'x 14, 17 (2d Cir. 2013) (quotation
omitted) (affirming decision to decline jurisdiction over state
law causes of action after dismissing RICO claim as "a wise
exercise of judicial economy").  In deciding whether to exercise
jurisdiction over supplemental state law claims, district courts
should balance the values of judicial economy, convenience,
fairness, and comity.  Klein & Co. Futures, Inc. v. Bd. of
Trade, 464 F.3d 255, 262 (2d Cir. 2006).

     "It is well settled that where, as here, the federal claims
are eliminated in the early stages of litigation, courts should
generally decline to exercise pendent jurisdiction over
remaining state law claims."  Id.  In the instant case, although
discovery was due to close on October 5, correspondence from the
parties indicates that the bulk of discovery remains undone;
several discovery requests remain outstanding and the parties
are still conferring regarding the scheduling of key
depositions.  Since the litigation remains at an early stage and
there are no significant judicial economy or fairness
considerations weighing in favor of jurisdiction, the Court

declines jurisdiction over the remaining state law causes of action. See Turner v. N.Y. Rosbruch/Harnik, Inc., 84 F. Supp. 3d 161, 171 (E.D.N.Y. 2015) (declining supplemental jurisdiction over state law causes of action after dismissing RICO claim); FindTheBest.com, Inc. v. Lumen View Tech. LLC, 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014) (same); Pieper v. Benerin, LLC, 972 F. Supp. 2d 321, 334-35 (E.D.N.Y. 2013) (same).

**The Motion to Amend is Denied**

Although the Second Circuit embraces a liberal standard for the amendment of pleadings, see Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 109 (2d Cir. 2014), a denial is proper if the Court makes a discretionary determination that amendment would be futile. See D. Penguin Bros. Ltd. V. City Nat'l Bank, 587 F. App'x 663, 669 (2d Cir. 2014). In their brief in support of their cross-motion, the Plaintiffs contend that amendment should be permitted because they "have made a reasonable showing of sufficient merit to their claims that the action could proceed to merits discovery." (Dkt. No. 48, at 22.) This discovery, in turn, would allow the Plaintiffs to "obtain additional documents and testimony to be used in refining the factual allegations of [their] pleading." (Id. at 23.)

19

Such discovery would involve significant time and expense, and appears unlikely to patch the holes in the Plaintiffs' RICO claims.  The only categories of discovery discussed in the Plaintiffs' brief include inquiry into Bernard's membership in certain of the Defendant corporations and inquiry into whether the Defendants used the funds from the sale of the properties for improper tax purposes.  (Id. at 22-23.)  While discovery into the latter topic might, in a best case scenario, help the Plaintiff make a case for open-ended continuity, nothing in the proposed discovery indicates any likelihood that the Plaintiffs have any viable prospect of sufficiently stating a RICO claim.  Since amendment of the RICO claim would be futile, the cross-motion to amend is denied.  See Penguin Bros., 587 F. App'x at 669.

**Conclusion**

The motion and cross-motion to dismiss are granted as to the Plaintiffs' claims under RICO.  Since diversity is not present and the remaining causes of action are tort and contract claims based exclusively on state law, the Court declines to exercise jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).  The cross-motion to amend the Complaint is denied.

20

It is so ordered.

New York, NY
November 14, 2015

ROBERT W. SWEET
U.S.D.J.